UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MILTON ISAIAH, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 4:12CV230 HEA |
| ) | |
| CITY OF PINE LAWN, et al., ) | |
| ) | |
| Defendants. ) | |

## **OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Ricky Collins' Motion for Summary Judgment, [Doc. No. 38] and Defendants Caldwell and City of Pine Lawn's Motion for Summary Judgment, [Doc. No. 41]. Plaintiffs oppose the motions. For the reasons set forth below, the Motions are granted in part and denied in part.

### Facts and Background

Plaintiffs are former Pine Lawn police officers who allege they were wrongfully discharged from their employment for expressing their views that certain orders and directives were improper and/or illegal. Counts I and II of Plaintiffs' Complaint is brought for a violation of "Public Policy" alleging that their "Constitutional Right to Due Process" was violated and in contravention of

public policy, for failing to afford Plaintiffs a hearing prior to terminating their employment.

Count III is brought under the provisions of 42 U.S.C. § 1983. Plaintiffs allege they were fired from their police officer positions with the City of Pine Lawn in retaliation for exercising their rights under the First Amendment to free speech and whistle blowing regarding the misconduct of Pine Lawn officials.

Defendants have submitted Statements of Uncontroverted Facts. Plaintiffs deny each of these facts, however, Plaintiffs have failed to specifically cite to the record wherein the facts are in controversy.

Plaintiff Isaiah was hired by the City of Pine Lawn as a patrol officer and was an employee of the City until his employment was terminated on February 14, 2011. Isaiah's employment was terminated as a result of a vote of the Board of Alderman of the City. Plaintiff Goforth was hired by the City of Pine Lawn as a patrol officer in 1999 and was an employee of the City until his employment was terminated on February 14, 2011. Goforth's employment was terminated as a result of a vote of the Board of Alderman of the City.

During their employment, Plaintiffs received different directives and/or orders which Plaintiffs believed were improper and/or illegal. Specifically, Plaintiff Isaiah contends that:

Defendant Collins issued an order that, when responding to a call at a home, to arrest every individual in the home; Collins set forth specific individuals with whom Isaiah could not speak or else he would be fired; Collins issued an order that every individual with an outstanding warrant that is pulled over must be arrested; Collins recommended a different officer, Officer Weaver, be terminated after that officer suggested that a certain arrest was illegal; Collins continually instructed his officers to write more tickets.

Plaintiff Goforth contends that:

Collins directed officers to arrest all individuals walking through the streets of Pine Lawn during late night or early morning; Collins directed that cars pulled over during traffic stops should be towed when the driver is arrested even if other individuals in the car are capable of driving it; Collins directed officers to arrest occupants of vehicles for violations on their cars; Collins directed officers to assist employees at Imo's Pizza Parlor in Northwoods, Missouri, which is outside of the City of Pine Lawn; Collins instructed Goforth to write up officers on his shift; Collins instructed Goforth to direct his shift to write more tickets; Collins instructed officers to write police reports that resulted in arrests.

All of the allegedly improper and/or illegal directives involved the manner in which Plaintiffs performed their jobs.

Neither Plaintiff complained to the FBI or other third party police agency about Collins or Collins' directives.

Plaintiff Isaiah only complained to his immediate supervisors, Sergeant Willie Epps and Corporal Joseph Goforth. He also complained directly to Collins on one occasion regarding Collins' alleged public threats that Isaiah would be fired. Plaintiff Isaiah once told his co-workers that he was going to go to the FBI to report the mayor of Pine Lawn and Collins putting out orders to violate civil rights.

Plaintiff Goforth complained to his immediate supervisor Lt. Dan O'Connor about the orders received from Collins. Goforth conversed with friends about his employment at Pine Lawn and Collins, but expressly admitted that these conversations did not constitute formal complaints.

Prior to Goforth's termination, Collins told him to call Mayor Caldwell and get on his good side because Mayor Caldwell wanted Goforth fired.

Per the city of Pine Lawn General Orders for the Duties and Responsibilities of police officers, "Any employee receiving an unlawful order has a duty to report such order, in writing, to the next higher authority through the appropriate chain of command." As Police officers, Plaintiffs have the power and duty to arrest individuals and prepare arrest reports in order to enforce Missouri state laws and the city of Pine Lawn's municipal ordinances.

As a corporal/supervisor, Goforth had a duty to supervise and direct the activities of personnel assigned to him and to inspect the work of his subordinates of effectiveness, efficiency and adherence to follow established policies and procedures, and to instruct and advise subordinates in the performance of their duties. Goforth had duties to review and forward all police reports prepared by officers in his platoon and to assist in the preparation of subordinate evaluations and review evaluations with subordinates as well as to initiate commendation or disciplinary actions for subordinates.

The City of Pine Lawn, Missouri, currently participates in – and has at all time since February 14, 2011 – the Missouri Public Entity Risk Management Fund ("MOPERM"), for purposes of maintaining certain liability coverage. On February 14, 2011, and at all other times relevant to the present lawsuit, the City of Pine Lawn maintained no liability coverage except as provided by MOPERM as reflected in the MOPERM Memorandum of Coverage. The MOPERM Memorandum of Coverage provides as follows:

1. WHAT MOPERM PAYS

A. COVERAGE

1. **Coverage for the Member Agency for claims on causes of action established by Missouri Law.** For claims on causes of action established by Missouri Law, **MOPERM** will pay on behalf of the **Member Agency** the **ultimate net loss** which the **Member Agency** shall become legally obligated to pay by reason of liability arising out of:

a. Injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motorized vehicles within the course of their employment;

b. Injuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury directly resulted from the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred, and that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition, as more fully set forth in Section 537.600(2) of the Missouri statutes.

The MOPERM Memorandum of Coverage also provides as follows:

B. DEFENSE

Nothing contained in this section, or the balance of the document, shall be construed to broaden the liability of the Member Agency beyond the provisions of Section 537.600 to Section 537.610 of the Missouri Statutes, nor to abolish or waive any defense at law which might otherwise be available to the Member Agency or its officers and employees.

## Summary Judgment Standard

In deciding whether to grant summary judgment, the Court views the facts and any inferences from those facts in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The movant bears the burden of establishing that: (1) there are no genuine disputes of material fact, and (2) it is entitled to judgment as a matter of law. Rule 56, Fed. R. Civ. P.; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once the movant has met this

burden, however, the non-moving party may not rest on the allegations in its pleadings but must, by affidavit and other evidence, set forth specific facts showing that a genuine issue of material act exists. Fed. R. Civ. P. 56(e).

## First Amendment Retaliatory Discharge Claim

Plaintiffs allege they were discharged because they spoke about the orders and directives they received from Defendant Collins, the former Chief of Police of Defendant City of Pine Lawn. They contend that their speech was protected by the First Amendment, and that the City violated their First Amendment rights by terminating their employment.

> "[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos,* 547 U.S. 410, 417, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), "and the cases decided in its wake identify ... inquiries to guide interpretation of the constitutional protections accorded to public employee speech. The first requires determining whether the employee spoke as a citizen on a matter of public concern." *Garcetti,* 547 U.S. at 418 (alteration in original). "If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Id.* "If the answer is yes, then the possibility of a First Amendment claim arises." *Id.*
>
> Next, if the possibility of a First Amendment claim has arisen, "we must ask whether [the employer] has produced evidence to indicate the speech had an adverse impact on the efficiency of the [employer's] operations." *Lindsey v. City of Orrick,* Mo., 491 F.3d 892, 900 (8th Cir.2007). "Where there is no evidence of disruption, resort to the *Pickering* factors is unnecessary because there are no government interests in efficiency to weigh against First Amendment interests." *Belk v. City of Eldon,* 228 F.3d 872, 881 (8th Cir.2000).
>
> Finally, if such an adverse impact is found, the court engages in the *Pickering* balancing inquiry: "The question becomes whether the relevant government

entity had an adequate justification for treating the employee differently from any other member of the general public." *Garcetti,* 547 U.S. at 418. "The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering,* 391 U.S. at 568. These questions "are matters of law for the court to resolve." *Kincade v. City of Blue Springs, Mo.,* 64 F.3d 389, 395 (8th Cir.1995).

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers,* 461 U.S. 138, 147–48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) (footnote omitted). "Speech that involves a matter of political, social or other concern to the community is of public concern." *Calvit v. Minneapolis Pub. Sch.,* 122 F.3d 1112, 1117 (8th Cir.1997). "The form and context are examined to determine whether the public employee speaks as a concerned citizen informing the public that the government is not properly discharging its duties, or merely as an employee speaking about internal practices relevant only to fellow employees." *Id.*

*Hemminghaus v. Missouri* WL 2937004, 6 -7 (8th Cir. 2014). This inquiry is one of law, not fact. *Hinshaw v. Smith,* 436 F.3d 997, 1004 (8th Cir.2006).

While speech by public employees is entitled to some measure of First Amendment protection, *Garcetti,* 547 U.S. at 417, the Court first inquires whether the employee spoke as a citizen on "a matter of public concern." *Fales*, 235 F.3d at 1123 (quotation marks omitted). Defendants first argue that Plaintiffs' speech was not of public concern because it related only to their "private interest" in the performing their jobs as police officers.

The speech at issue herein was conveyed only to other Pine Lawn police personnel and a few friends. No other law enforcement agencies were contacted

regarding the possible illegality of the policies, directives and orders. Moreover, Plaintiffs, as part of their responsibilities as police officers, had a duty to report any action which they perceived as illegal or improper. Although Plaintiffs threatened to "go to the FBI," the record is completely devoid of any evidence that the speech was conveyed as private citizens speaking on matters of public concern; Plaintiffs spoke as public employees on matters relating to the manner in which they were required to do their jobs. See *Bonn v. City of* Omaha, 623 F.3d 587, 589 (8th Cir. 2010).

Because the Court determines that the speech involved in this matter was not spoken by Plaintiffs as private citizens in the context of matters of public concern, but rather, as public employees regarding the manner in which they were required to perform their jobs, their complaints are not protected by the First Amendment. Thus, Defendants are entitled to summary judgment on Count III.

With regard to Counts I and II, Defendants argue that these Counts should be dismissed, as they raise issues of Missouri state law. Plaintiff, however, argues to the contrary, these Counts also raise Constitutional issues of due process in that Plaintiffs had a property interest in their jobs and were entitled to a hearing on their employment termination.

As the counts now stand, Plaintiffs have failed to sufficiently set forth claims for due process violations of the United States Constitution and the mechanism

through which they may bring these due process claims. While Defendants are not entitled to summary judgment on these claims, Plaintiffs' claims cannot stand as written. The Court will therefore allow Plaintiffs to amend Counts I and II and will deny the motion for summary judgment without prejudice to reasserting their arguments after any amendments.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motions for Summary Judgment, [Doc. No's 38 and 41] are granted in part and denied in part.

**IT IS FURTHER ORDERED** that summary judgment is granted as to Count III.

**IT IS FURTHER ORDERED** that Counts I and II are dismissed.

**IT IS FURTHER ORDERED** that Plaintiffs are given 14 days from the date of this order to file an Amended Complaint with respect to Counts I and II.

Dated this 12th day of August, 2014.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE