UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MILTON ISAIAH, et al., | ) |
| Plaintiffs, | ) |
| v. | ) No. 4:12CV230 HEA |
| CITY OF PINE LAWN, et al., | ) |
| Defendants, | ) |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Joint Motion to Dismiss Plaintiffs' First Amended Complaint. [Doc. No. 64]. Plaintiffs have filed a response in opposition to the motion. [Doc. No. 66]. Defendants have filed a Reply. [Doc. No. 67]. For the reasons set forth below, the Motion is granted.

**Facts and Background[1]**

Plaintiffs, Milton Isaiah and Joseph Goforth, are former City of Pine Lawn police officers who allege that they were wrongfully discharged for refusing to follow certain orders and directives which were improper, illegal and, in some instances, unconstitutional. Plaintiffs' First Amended Complaint ("Complaint") is brought under 42 U.S.C. § 1983 and alleges violations of both their procedural due process rights under the Fourteenth Amendment (Counts I), and their substantive due process rights (Count II).[2] Named as Defendants are: the City of Pine Lawn, a

---

[1] The recitation of facts is taken from Plaintiffs' First Amended Complaint and are taken as true for the purposes of this motion. Such recitation in no way relieves any party from the necessary proof thereof in later proceedings.

[2] Plaintiffs' original Complaint consisted of two counts of "Violation of Public Policy" and a First Amendment Retaliation claim. [Doc. No. 1]. By Opinion, Memorandum and Order entered on August 12, 2014, the Court granted summary judgment for Defendants on the First Amendment Retaliation claim and afforded Plaintiffs an opportunity to amend their Complaint, given that their Violation of Public Policy claims "fail[ed] to sufficiently set forth claims for due process violations of the United States Constitution and the mechanism through which they may bring these due process claims." [Doc. No. 59].

municipal corporation located in St. Louis County, Missouri; Sylvester Caldwell, the Mayor of Pine Lawn; and Ricky Collins, the Chief of Police of Pine Lawn.

On February 14, 2011, the Board of Aldermen of Pine Lawn, in separate votes, terminated Plaintiffs. The votes were taken upon the joint request of Defendants Caldwell and Collins. Plaintiffs assert that they were discharged from their tenured positions, without receiving hearings required under Pine Lawn municipal law. Further, Plaintiffs argue that they were entitled to, but did not receive, procedural due process guaranteed to them under the Fourteenth Amendment of the United States Constitution—namely, notice, a hearing, and an opportunity to respond. Finally, Plaintiffs allege that they were terminated to "cover up the illegal or improper actions of the Police Department and City," and contend that their discharge for refusing to violate the constitution was outrageous and shocks the conscience. Plaintiffs request damages and injunctive relief reinstating them in their former positions.

**Standard**

A defendant may file a motion to dismiss for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a plaintiff must plead facts from which the court can draw a "reasonable inference" of liability. *Iqbal*, 556 U.S. at 678. The complaint need not contain "detailed factual allegations" but must contain more than mere "labels and conclusions, and a formulaic recitation of the elements" or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555, 557. An "unadorned, the-defendant-unlawfully-harmed-me accusation" will not suffice. *Iqbal*, 556 U.S. at 678. "While legal conclusions can

provide the framework of a complaint, they must be supported by factual allegations," *id.* at 679, which "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555.

In evaluating a motion to dismiss, the court can "choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Turning to any "well-pleaded factual allegations," the court should "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* The court may only consider the initial pleadings. *Brooks v. Midwest Heart Grp.*, 655 F.3d 796, 799 (8th Cir. 2011).

## Discussion

Defendants contend that Plaintiffs were not entitled to procedural due process before their discharge and cannot state a substantive due process claim because Plaintiffs did not have a protected life, liberty, or property interest in their positions as police officers with the City of Pine Lawn. The Court agrees.

**A.     Procedural Due Process**

The Fourteenth Amendment prohibits governments from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To establish a constitutionally protected deprivation of property, [Plaintiffs] must show they each held a 'property right in continued employment.'" *Crews v. Monarch Fire Prot. Dist.*, 771 F.3d 1085, 1089 (8th Cir. 2014) (quoting *Floyd-Gimon v. Univ. of Ark. for Med. Scis. ex rel. Bd. of Trs. of Univ. of Ark.*, 716 F.3d 1141, 1146 (8th Cir. 2013)). The Court looks to Missouri state law to determine whether Plaintiffs had a constitutionally protected property interest in their positions as police officers with the City of Pine Lawn. *Mulvenon v. Greenwood*, 643 F.3d 653, 657 (8th Cir. 2011). Plaintiffs must "show by reference to a specific source, such as a contract or statute, that they had a legitimate claim of entitlement to continued employment." *Armer v. City of*

*Salem*, 861 F.2d 514, 515 (8th Cir. 1988) (citing *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

Under section 79.240 of the Missouri Revised Statutes, the Mayor of a fourth-class city "may, with the consent of a majority of all the members elected to the board of aldermen, remove from office any appointive officer of the city *at will* . . . ." R.S.Mo. § 79.240 (emphasis added).[3] The Court takes judicial notice of the fact that the City of Pine Lawn was classified as a fourth-class city in 2011, when Plaintiffs were terminated.[4] *See* Missouri Roster 2011-2012 – A Directory of State, District and County Officials, at 172, available at http://www.sos.mo.gov/MOroster/2011-2012_Missouri_Roster.pdf (last visited January 29, 2015); *see also id.* at 158 ("Once a community is incorporated under a given classification, the municipality does not automatically change classification with a gain or loss of population. A municipality may change classification only when the change is approved by a majority vote of the people."); R.S.Mo. § 72.070. Further, "Missouri courts have consistently treated fourth-class city police officers as 'appointive officers' within the meaning of § 79.240." *Armer*, 861 F.2d at 515 (citing *Amaan v. City of Eureka*, 615 S.W.2d 414 (Mo. 1981) (en banc); *Pumphrey v. City of Lutesville*, 707 S.W.2d 475 (Mo. Ct. App. 1986); *State ex rel. Ciaramitaro v. City of Charlack*, 679 S.W.2d 405 (Mo. Ct. App. 1984)).

---

[3] The relevant subsection of § 79.240 provides, in its entirety:
> The mayor may, with the consent of a majority of all the members elected to the board of aldermen, remove from office, for cause shown, any elective officer of the city, such officer being first given opportunity, together with his witnesses, to be heard before the board of aldermen sitting as a board of impeachment. Any elective officer, including the mayor, may in like manner, for cause shown, be removed from office by a two-thirds vote of all members elected to the board of aldermen, independently of the mayor's approval or recommendation. The mayor may, with the consent of a majority of all the members elected to the board of aldermen, remove from office any appointive officer of the city at will, and any such appointive officer may be so removed by a two-thirds vote of all the members elected to the board of aldermen, independently of the mayor's approval or recommendation. The board of aldermen may pass ordinances regulating the manner of impeachments and removals.

R.S.Mo. § 79.240.

[4] A fourth class city has a population between five hundred and three thousand residents. R.S.Mo. § 72.040.

Accordingly, because Pine Lawn is a fourth-class city and Plaintiffs were appointive officers, Plaintiffs were at-will employees under Missouri law who could be terminated for "no reason or any reason," and thus did not have a property interest in their continued employment implicating procedural due process requirements. *See id*; *State ex rel. Lupo v. City of Wentzville*, 886 S.W.2d 727 (Mo. Ct. App. 1994) ("Under §§ 79.230 and 79.240 police officers of fourth-class cities are employees at will and may be removed for no reason or any reason by the mayor with consent of the Board of Aldermen. An employee at will has no property interest in his or her employment and is not entitled to procedural due process upon termination.") (citing *Rapp v. City of Northwoods*, 769 S.W.2d 815, 818 (Mo. Ct. App. 1989); *Johnson v. City of Buckner*, 610 S.W.2d 406, 408–09 (Mo. Ct. App. 1980); *Cooper v. City of Creve Coeur*, 556 S.W.2d 717, 720 (Mo. Ct. App. 1977); *Karzin v. Collett*, 562 S.W.2d 397, 399 (Mo. Ct. App. 1978)).[5] The Eighth Circuit, following Missouri case law, has roundly rejected Plaintiffs' argument that, because local Pine Lawn municipal law allegedly made them tenured employees who could not be discharged without a hearing, they were entitled to procedural due process protections:

> [A]ppellants argue that their employment status is not governed by the "appointive officer" provision of § 79.240 because they are not appointive officers within the meaning of that statute. They claim that under Salem city ordinances police officers are "permanent employees" removable only for cause after notice and a hearing. Even assuming that Salem ordinances attempt to give police officers a permanent employee status, we reject this argument because § 79.240 controls over any city ordinance to the contrary which purports to change fourth-class city appointive officers' status from that of at-will. *Pumphrey*, 707 S.W.2d at 477. Salem ordinances cannot override § 79.240 by attempting to classify police officers as something other than "appointive officers" in order to place them beyond the reach of § 79.240, especially where the Missouri courts have established that fourth-class city police officers are governed by the "appointive officer" provision of § 79.240.

*Armer*, 861 F.2d at 515–16 (footnote omitted).

---

[5] Plaintiffs' contention that Pine Lawn's status as a fourth-class city and their former classification as "appointive officers" are unresolved questions of fact is simply incorrect.

Plaintiffs argue that "the Eighth Circuit's rationale in *Armer* is inconsistent with the language of the statute," because "R.S.Mo. § 79.240 provides that *'[t]he board of aldermen may pass ordinances regulating the manner of impeachment and removals.*'" [Doc. No. 66 at 4]. Plaintiffs assert "[t]hat is precisely what occurred in this case. The ordinances provided the notice, hearing, and opportunity to respond procedures." [*Id.*].

However, as noted, the Eighth Circuit in *Armer* was following Missouri case law, and the Missouri courts have addressed this issue. In 1976, when the Missouri Court of Appeals decided *Russell*, § 79.240 contained the same provision upon which Plaintiffs now rely. The plaintiff in *Russell* argued that a local municipal ordinance prevented his summary removal because it was passed by the Board of Aldermen pursuant to "the power granted to [the Board] by the last sentence of § 79.240[,] [which] allows the Board to pass ordinances to regulate the manner of impeachments and removals." 544 S.W.2d at 52. The *Russell* court rejected this argument, explaining:

> The power granted here is for the Board to prescribe the method, mode or way in which impeachment or removal would be made. Russell would have this court construe the personnel code to prohibit his firing except for cause and with notice and hearing. He contends this is a way or mode in which he could be removed. It is apparent the [local] personnel code contains a limitation on the right of the mayor to remove the city attorney, which limitation is not contained in § 79.240. Thus, the personnel code did go beyond the manner or mode by which the mayor could exercise his right to remove the city attorney at any time he desired and to this extent the personnel code is in conflict with such Section as applied to the city attorney.
>
> It would be perfectly proper for the City to prescribe by ordinance that removals should be made by the mayor upon certain forms or by filing a certain statement or order with the Board and specify the form in which the Board would signify its consent. The personnel code did not address the manner or mode of carrying out the power conferred by § 79.240. It follows the personnel code may not be construed to have been passed to prescribe the manner in which removals are made.

*Id.*.

The *Russell* court ultimately held that "[b]ecause the State law confers on the mayor the power to remove the city attorney at any time it suits his pleasure, with the consent of the majority of all members of the Board, it follows an ordinance of the city which in any way restricts this power is contrary to the State law and cannot impinge the authority of the mayor to remove the city attorney." *Id.* at 51; *see also Pumphrey*, 707 S.W.2d at 477 ("An ordinance of a city which in any way restricts the power of removal under § 79.240 is contrary to state law and invalid.") (citations omitted). Accordingly, Plaintiffs' reliance on the "ordinances regulating the manner of impeachment and removals" provision of § 79.240 is misguided.

Plaintiffs had no property interest in their employment and, therefore, the due process clause was not implicated when they were terminated. Plaintiffs "served as at-will employees under § 79.240, and thus were removable for any reason or no reason. Contrary city ordinances, to the extent that any exist, are not effective to assign them any greater status." *Armer*, 861 F.2d at 516.

For these reasons, Count I, alleging violations of Plaintiffs' procedural due process rights under the Fourteenth Amendment, is dismissed.

**B.  Substantive Due Process**

Plaintiffs' failure to allege a property interest is fatal to their substantive due process claim as well. "To prevail on a substantive due process claim, [Plaintiffs] must show "a constitutionally protected property interest *and* that [city] officials used their power in such an arbitrary and oppressive way that it 'shocks the conscience.'" *Novotny v. Tripp Cnty.*, 664 F.3d 1173, 1178 (8th Cir. 2011) (emphasis added) (quoting *Gallagher v. Magner*, 619 F.3d 823, 840 (8th Cir. 2010)); *see also Folkerts v. City of Waverly*, 707 F.3d 975, 980 (8th Cir. 2013) ("To establish a substantive due process violation, the Folkertses must demonstrate that a fundamental right was violated and that Schneider's conduct shocks the conscience.") (citation omitted);

*Singleton v. Cecil*, 176 F.3d 419, 422 (8th Cir. 1999) (en banc) ("Under Eighth Circuit law, th[e] concession [that there was no deprivation of any life, liberty or property interest that would support a procedural due process claim] should have precluded Officer Singleton from proceeding on a substantive due process theory.") (citations omitted).[6] Thus, because Plaintiffs fail to allege a property interest in their continued employment, as discussed above, they cannot state a claim for a substantive due process violation.

Plaintiffs' assertion that "the protectable property interest in this case is also derived from the United States and Missouri constitutional protections, which under Missouri law, protect an individual from being terminated for refusing to violate [the] law or reporting such violations to supervisors," [Doc. No. 66 at 4], is unavailing. Plaintiffs go on to cite the Missouri common law as it relates to wrongful discharge and Missouri Human Rights Act claims. For example, Plaintiffs correctly note that the Missouri Supreme Court has created a public policy exception to the at-will employment doctrine, under which "[a]n at-will employee may not be terminated (1) for refusing to violate the law or any well-established and clear mandate of public policy as expressed in the constitution, statutes, regulations promulgated pursuant to statute, or rules created by a governmental body or (2) for reporting wrongdoing or violations of law to superiors

---

[6] Defendants heavily rely on *Singleton* for the proposition that "[p]ossession of a protected life, liberty, or property interest is a condition precedent to any due process claim, procedural or substantive, and '[w]here no such interest exists, there can be no due process violation.'" [Doc. No. 67 at 2–3] [quoting *Singleton*, 176 F.3d at 424]. The Court notes that a footnote in *Singleton* can be read to suggest that a plaintiff can bring a substantive due process claim, absent the possession of a of a protected life, liberty, or property interest, by "assert[ing] that the government's actions 'either shock[] the conscience or 'offend[] judicial notions of fairness . . . or . . . human dignity.'" *Singleton*, 176 F.3d at 425 n.7 (quoting *Riley v. St. Louis Cnty.*, 153 F.3d 627, 631 (8th Cir. 1998)). However, in *Moran v. Clarke*, Judge Bye, concurring and writing for an en banc majority on the issue—as noted in *Akins v. Epperly*, 588 F.3d 1178, 1183 (8th Cir. 2009)—identified the questionable footnote from *Singleton*, and clarified that "[i]n every case in which a plaintiff challenges the actions of an executive official under the substantive component of the Due Process Clause, he must demonstrate both that the official's conduct was conscience shocking, *and* that the official violated one or more fundamental rights that are 'deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.'" *Moran v. Clarke*, 296 F.3d 638, 651 (8th Cir. 2002) (en banc) (emphasis added) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)).

or public authorities." *Fleshner v. Pepose Vision Inst., P.C.*, 304 S.W.3d 81, 92 (Mo. 2010) (citations omitted).

However, Plaintiffs misapply the import of this exception to the at-will employment doctrine. The Missouri Supreme Court held: "If an employer terminates an employee for either reason [quoted above], then *the employee has a cause of action in tort for wrongful discharge based on the public-policy exception.*" *Id.* (emphasis added). The Eighth Circuit has explained that "[t]he right not to be discharged in violation of the State's public policy is not a property interest for procedural due process purposes. It is a substantive right, the violation of which gives rise to a substantive claim under state law, just as the right not to be discharged on account of race, sex, or age gives rise to a substantive claim under federal law." *Bennett v. Watters*, 260 F.3d 925, 929 (8th Cir. 2001).The same is true with regard to the other aspects of the Missouri common law which Plaintiffs assert bestowed upon them a property interest in continued employment.

For these reasons, Count II, alleging violations of Plaintiffs' substantive due process rights under the Fourteenth Amendment, is dismissed.

**C.     Capacity**

The Court briefly notes another deficiency in the Complaint as it relates to Plaintiffs' claims for monetary damages. Plaintiffs fail to specify whether they are suing Defendants Caldwell and Collins in their individual capacities, official capacities, or both. Where a "complaint is silent about the capacity in which [plaintiff] is suing defendant, [a district court must] interpret the complaint as including only official-capacity claims." *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *see also Zajrael v. Harmon*, 677 F.3d 353, 355 (8th Cir. 2012) (per curiam) ("Because Zajrael's amended complaint does not specifically name the defendants in their individual capacities, we presume that he sued them only in their official

capacities.") (citations omitted). Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

To state a claim for monetary damages against a municipality or a government official in his or her official capacity, a plaintiff must allege that a policy or custom of the government entity deprived him of him of rights protected by the Constitution. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). Because Plaintiffs allege no "policy or custom" of Pine Lawn that deprived them of rights protected by the Constitution, they fail to state a claim for monetary damages against Pine Lawn or Defendants Caldwell and Collins in their official capacities.

The Court conducted the foregoing analysis of the merits of Plaintiffs' due process claims because Plaintiffs sought prospective injunctive relief in the form of reinstatement as Pine Lawn police officers, and "[government] officials *may be sued in their official capacities for prospective injunctive relief* without violating the Eleventh Amendment[.]"*Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (emphasis added). However, Plaintiffs' claims for monetary damages against Defendants are dismissed on the additional grounds that Plaintiffs failed to allege that they were deprived of Constitutional rights as the result of a Pine Lawn policy or custom, and Plaintiffs failed to specify that they were suing Defendants Caldwell and Collins in their individual capacities.

**Conclusion**

Based on the foregoing analysis, the Court grants Defendants' Joint Motion to Dismiss Plaintiffs' First Amended Complaint, and dismisses this matter.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Joint Motion to Dismiss Plaintiffs' First Amended Complaint [Doc. No. 64] is **GRANTED**.

**IT IS FURTHER ORDERED** that this matter is **DISMISSED**.

Dated this 2nd day of February, 2015.

_____
  HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE